Parker, C. J.
There being a demurrer to the declaration in this case, and a joinder in demurrer, the question to be decided is, whether the declaration is sufficient in law to be the foundation of a judgment for the plaintiff. An action of the case for deceit was probably contemplated by the attorney who drew the declaration ; and yet several promises being alleged, as well as a breach of those promises, if the facts stated will establish a contract which can be supported by paroi testimony, or a wrong done for which an action lies, the declaration may be considered as sufficient. [Here his honor recited the allegations of the plaintiff’s declaration, and proceeded.]
By the ancient common law, before the statute of 29 Car. 2, c. 3, commonly called the statute of frauds and perjuries, an action of assumpsit or of deceit might have been maintained upon these facts. There is a distinct promise to do something valuable to the plaintiff, and there is a sufficient consideration. That statute, however, was enacted with a view to prevent contracts concerning real estate from being enforced, or damages recovered for the breach of such contracts, unless proved by written evidence; it being found inconvenient to depend upon the memory or the integrity of witnesses in disputes relating to real estate.
In the year 1692, the legislative power of the then province of Massachusetts Bay passed a law, (5) containing provisions similar to those in the Stat. 29 Car. 2; and, in the year 1783, the legislature of the commonwealth made a law * upon the [ * 346 ] same subject, and with nearly the same provisions, (6) the second section of which is in the following words: “No action shall hereafter be maintained upon any contract or sale of lands, tenements, or hereditaments, or any interest in or concerning the same, unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized.”
It is somewhat singular that a very incorrect phraseology of the statute of Charles, producing some little obscurity, should have been adopted, both in the provincial act, and in the statute of the commonwealth. No contract or sale of lands, &c., was probably at first misprinted or miswritten for, no contract for the sale of lands, &c.
We find no action sustained in the courts of common law in England, since the passing of the statute of Charles, upon a mere *316 verbal promise to convey land, or any interest in lands, tenements, or hereditaments, (a)
It is true, the courts of chancery have entertained bills in equity, and have decreed the specific performance of contracts of this nature, which had only unwritten testimony for their proof; but they have always proceeded cautiously; and, of late, it has been much doubted, by some very eminent chancellors, whether more mischief than good has not been the effect of a departure from the letter, if not the spirit of the statute. The cases, however, in which a specific performance is decreed are not numerous, and are reducible to two or three classes.
W herever a fraud has been committed in a bargain of this sort, the Court relieves upon the ground that a statute made to prevent frauds ought not to be used to promote them. Thus w'here one, having borrowed money, intended to secure the lender by an absolute deed with a deed of defeasance, and having executed and de livered his deed, the lender refused to execute the deed of defeasance, it is said that he may be compelled to do it in [ * 347 ] chancery. (7) This is certainly * a very strong case, because the statement seems to admit that a deed of defeasance was actually drawn, and every thing completed but the signature of the party. This was a palpable and gross fraud, and might have subjected the party who committed it to a criminal prosecution. It is not extraordinary that a court of equitable jurisdiction should interpose in such a case.
Another class of cases, in which equity will decree in favor of a contract not in writing, notwithstanding the statute of frauds, is where the party contracting to sell or lease has in part executed his contract, by putting the other party in possession, causing him to be at expense for repairs, &c., and also when a substantial part of the consideration has been paid by the party claiming the execution of the contract. The reason given for this apparent evasion of the statute is, that the act of the party to be charged has rendered perjury in proving the contract less probable, and the danger of relying upon paroi evidence less considerable. It has also been said that even these cases proceed upon the ground of fraud; it being fraudulent in a party to avail himself of his part of a bargain, or to put the other party to expense and inconvenience, and then refuse to execute it.
It is also held, that, where a bill in equity sets forth a contract concerning real estate not in writing, and the party in his answer *317 confesses it, in that case it will be enforced, although he plead the statute of frauds; because his confession avoids entirely the danger of fraud or perjury in establishing the contract.
Except these classes of cases, we believe even a court of chancery in England does not support a verbal contract concerning real estate.
It might be sufficient, in the case at bar, to say that we have no general chancery jurisdiction. But, as in most cases, where, by the rules of a court of equity, a specific performance might be decreed in a court of law, damages may be recovered for the breach of such contract, it is necessary * to inquire [ * 348 ] whether the case before us could be helped in a court of chancery. If it were a case of direct fraud, like the one first cited, there would be no difficulty. But no instance can be found, in the reports of chancery cases, of a specific performance decreed, where the fraud consisted only in a breach of promise. Here the deed was made and delivered, according to the real intent of the parties at the time. There was no trick or contrivance to get it out of the hands of the plaintiff, without giving him security. The plaintiff intended that the defendant should have the deed, and relied altogether upon his promise to meet him at some future time, and give the security. Without doubt, the non-performance of this promise is, in a moral point of view, a fraud; but it is no more fraudulent than any other breach of trust or of promise. There was no false representation, tokens, or pretences, which are the indications of that species of fraud which is the foundation of an action for deceit, (a)
The case has been attempted to be likened to those in chancery, where a specific performance has been decreed, because the contract had been partially executed by the party against whom relief was prayed. But there is no resemblance. The whole contract, as far as written proof exists, has been performed. The deed is perfect in itself, and contains nothing ambiguous, or which requires explanation. The promise, as stated in the declaration, is entirely independent of the deed ; goes to change the nature of the conveyance from an absolute to a conditional one, or to set up an agreement, on the part of the defendant, to give the plaintiff an interest in the estate, which, according to the forms of conveyance estab *318 lished by our statute, was wholly in the defendant. It is the very case in which, by the statute, written evidence, and that alone, is permitted to be used. We are satisfied that this action, as an assumpsit upon the contract, which is stated in the declaration to be verbal, cannot be supported.
And we are equally clear that there is not enough alleged in the declaration to maintain an action of deceit, which, [ * 349 ] * by the words used in the latter part of the declaration, may be supposed the species of action principally relied upon by the plaintiff. He has stated distinctly the facts upon which he expects to ground his charge of fraud. It has been before observed that the non-performance of the promise is the only circumstance from which fraud is to be inferred; and the declaration seems to have been drawn with a view to ascertain whether that species of fraud will give a right of action, by which all the advantages of the contract may be obtained by the plaintiff, although he confessedly depends upon unwritten testimony alone to support it.
If this declaration could be maintained, it would follow that, in all cases where a party had made a verbal agreement respecting lands, &c., by choosing his form of action, he might avoid the operation of the statute. It is better that a man, who has been so grossly negligent of his affairs as to rely upon the honor of the party with whom he deals, when the laws of his country have always declared that he shall have no remedy for ¿he breach of such an engagement, should suffer, than that the rules of property should fluctuate according to the notions of different judges, as to the merits of each particular case.
It is possible that the plaintiff can make out a better case than he has stated in his declaration. It does not appear from that that the defendant intends to defraud him of his land, that he has taken possession of it, or that he has refused to receive the money it was intended to secure, and abandon his claim to it. The very facts stated by the plaintiff show that the delay and inconvenience attending upon a mortgage were to be avoided; for the defeasance was to be executed at a future day. The defendant meant to hold the land until he was indemnified. He has paid more than 300 dollars some years agone, according to the plaintiff’s showing ; yet the plaintiff has not repaid, or offered to repay, that sum.
It would appear, from the present action, that the object of the plaintiff himself was to depart from the agreement he [*350] declares *was made when the deed was executed. Instead of considering the lg.nd as security in the defendant’s hands for the money he advanced, and attempting to re« *319 gain the land by paying the debt, his object in this suit seems to be to compel the defendant, at all events, to keep the land, and to get the value of it in money.
Whatever may be the prospect of remedy upon a different state of facts, amounting to direct fraud or trick on the part of the defendant, we are satisfied, as they are now exhibited, that there is no legal ground of action, either upon contract or tort, (a)

Declaration adjudged bad.

 4 W. & M. c. 3; vide Mass. Stat. vol. ii. p. 972.

 Stat. 1783 c. 37

 Vide Dillingham vs. Runnels, 4 Mass. Rep. 400. — Scott vs. Wilkinson, 17 Mass Rep. 249. —Hoby vs. Roebuck, 2 Marsh. 433. — 7 Taunt. 157.

 5 Vin. Abr., title Contract: — 2 Atk. 99. — 3 Atk. 389. — Vern. 160. — Freem. 269

 There can be no doubt but that relief might be had in chancery.— Marsh vs. Pell, 1 Johns. Ch. 594. — Strong vs. Stewart, 4 Johns. Ch. 167. — Washburn vs. Merrill, 1 Day, 139. —Daniels vs. Atwood, 2 Root, 196. — Ross vs. Nowell, 1 Wash. 15.— Watkins vs. Stockett, 6 Har. & M 'Hen. 24. — Wilcox’s Heirs vs. Morris & Al. 1 Murph. 117.— Wilcox vs. Carver, 4 Hay. 93.— Wheeland, vs. Swart & Al. 1 Yeates, 579.— 13 Serg. & Rawle, 239. — Bolton vs. Avery, 2 Root, 279.— Wharf vs. Howell, 3 Bing 499.

 Sherburne vs. Fuller, 5 Mass. Rep. 133. — Kidder vs. Hunt, 1 Pick. 338. — Von Alstine vs. Wimple, 5 Cow. 162. — Pitts vs. Waugh, 4 Mass. Rep. 424. — Baker vs. Towell, 6 Mass. Rep. 460. — Scott vs. M’Farland, 13 Mass. Rep. 309.—Bliss vs. Thomson, 4 Mass. Rep. 488. — Owen vs. Estes, 5 Mass. Rep. 330. — Cook vs. Stearns, post, 533. — Flint vs. Shelden, 13 Mass. Rep. 447. — Goodwin vs. Hubbard, 15 Mass. Rep. 218.—Bend vs. Susquehanna Br. & Bank Co. 6 Har. & Johns. 128. — Lloyd vs. Inglis, 1 Dess. 333. — Dickerson vs. Dickerson, 1 Car. Law Rep. 262. — M’Teer vs. Shepherd, 1 Bay. 461. — Fitzpatrick vs. Smith, 1 Dess. 341. — Streator vs. Jones, 1 Mur. 449. — Lund vs. Lund, Ad. 39. — Bickford vs. Daniels, 2 N. H. 71—Runlet vs Otis, 2 N. H. 167.